# Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles on 06/03/2020 06:10 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
20STCV20977

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: David Cowan

Azar Mouzari, Esq. (State Bar No. 263461)
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel: 310-858-5567
Fax: 424-286-0963
Email: azar@bhtrialattorneys.com

Attorneys for Plaintiff ADERIYIKE LAWAL

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| ADERIYIKE LAWAL, an individual. <br><br> Plaintiff, <br><br> v. <br><br> PATAGONIA GLOBAL, LLC, a California Limited Liability Company, and DOES 1-10, inclusive. <br><br> Defendants. | Case No.: <br><br> **20STCV20977** <br><br> **COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Ms. Aderiyike Lawal ("Plaintiff"), alleges the following based upon information and belief:

## I. NATURE OF THE CASE

1. Plaintiff brings this civil rights action against Patagonia Global, LLC, a California Limited Liability Company, ("Defendant") seeking to put an end to the systemic civil rights violations committed by Defendant against Plaintiff.

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to access and read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" herein to refer to all people with visual impairments who meet the legal

1  definition of blindness in that they fall within the meaning of California's Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51, *et seq.* and have a visual acuity with correction of less than or equal to 20 x 200.

3. Plaintiff, and all other visually impaired individuals, are unnecessarily denied equal access to the same online information and goods and services offered to others because Defendant's website, https://www.patagonia.com/ (the "Website"), and all subgroups of webpages contained in the Website are not fully accessible to screen-reading technology used by blind individuals. This relegates visually impaired customers of Defendant to a second-class experience. If Defendant's Website was accessible, then visually impaired individuals could independently access information relating to the pricing, description, and details of Defendant's goods and services, with the same convenience available to others. In contrast with Defendant, many other businesses operate websites and mobile applications that are fully accessible to visually impaired individuals.

4. Upon information and belief, Plaintiff alleges that Defendant produces, markets, offers for sale, sells, and/or monetizes designer retail products and goods, including clothing and other personal accessories, in various retailers including one(s) located within the County of Los Angeles, California. The retail store(s) that offer Defendant's products are commercial stores that offer for sale clothing and other personal accessories to the public. The retail store(s) that offer Defendant's products, including the one(s) within the County of Los Angeles, California, are places of public accommodation open to the public.

5. Upon information and belief, Plaintiff alleges that Defendant owns, operates, manages, updates and/or monetizes its Website, which provides to the public a wide array of goods, services, discounts, gift cards, and/or information concerning the brick-and-mortar retail store(s)

that offer Defendant's products, including the one(s) located in the County of Los Angeles. The Website also offers the public online features that allow the sale of Defendant's goods and services.

6. Defendant's Website contains significant access barriers that make it impossible for visually impaired customers to properly and fully utilize the Website. Specifically, these barriers make it impossible for Plaintiff to have full access to the Website and independently purchase goods and services online and access information concerning discounts, brick-and-mortar stores, and other goods and services offered by Defendant online.

7. Defendant thus excludes the visually impaired from full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life for visually impaired individuals, allowing them to fully and independently access a variety of goods and services, including making online purchase of consumer products.

8. Despite readily available methods to render websites fully accessible to all, such as the methods in use by other businesses, which make correct and proper use of alternative text, accessible forms, descriptive links, resizable text, and labels, Defendant has failed to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff and other visually-impaired individuals.

9. Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered thereby and in conjunction with the physical location(s) that offer for sale Defendant's products, is a violation of Plaintiff's rights under the UCRA.

COMPLAINT
- 3 -

10. The California legislature has provided a clear, national mandate for the elimination of discrimination against individuals with disabilities when it enacted California's UCRA, Cal. Civ. Code § 51, *et seq.* Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Specifically, California state law mandates equal protection of persons with disabilities, requiring that places of public accommodation provide access to goods, services and facilities for persons with disabilities. *See* UCRA, Cal. Civ. Code § 51, *et seq.*

11. Unless Defendant remedies the numerous access barriers on its Website, Plaintiff will continue to be unable to independently navigate, browse, use, access and complete a transaction on the Website. Because Defendant's Website is not equally accessible to blind and visually-impaired consumers in violation of the UCRA, this complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law and to include monitoring of such measures, to update and remove accessibility barriers on the Website so that Plaintiff may be able to independently and privately use Defendant's Website. This complaint also seeks compensatory damages to Plaintiff for having been subjected to unlawful discrimination.

## II. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action. This Court also has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the County of Los Angeles, in the State of California and because Defendant's offending Website is available across California. Brick-and-mortar

location(s) of retail store(s) that offer for sale Defendant's products are also located within the County of Los Angeles.

13. Defendant has been and is committing the acts alleged herein through its Website accessible in the County of Los Angeles, and has been and is violating the rights of Plaintiff and other consumers with disabilities in this County, and has been and is causing injury to Plaintiff in this County. All events giving rise to Plaintiff's causes of action took place in the State of California, County of Los Angeles. Therefore, jurisdiction of this Court is proper.

14. Venue is proper in this Court because Plaintiff resides in the County of Los Angeles, Defendant conducts and continues to conduct a substantial and significant amount of business in this County, Defendant is also subject to personal jurisdiction in this County, and a substantial portion of the conduct complained of herein occurred in this County.

### III. PARTIES

15. Plaintiff, at all times relevant and as alleged herein, is a resident of Los Angeles, California.

16. Plaintiff is a blind, visually-impaired handicapped person. Plaintiff uses screen-reader software to access and operate websites and mobile applications. She is knowledgeable about various tools which allow visually impaired individuals to access websites, including various screen-reader software.

17. Plaintiff has attempted to use Defendant's Website in order to access information concerning Defendant's goods and services available online and in brick-and-mortar retail store(s). She has been unable to access information and goods and services offered to others through the Website. She desires to use Defendant's Website and has the necessary computer technology to do so if it were fully accessible to the visually impaired.

18. The access barriers Plaintiff has encountered on Defendant's Website have deterred Plaintiff from purchasing goods and services through Defendant's Website as well as visiting the brick-and-mortar location(s) that offer for sale Defendant's products.

19. Plaintiff is informed and believes, and thereon alleges that Defendant owns, operates, manages, updates and/or monetizes its Website, which provides to the public a wide array of goods, services, discounts, gift cards, and/or information concerning brick-and-mortar retail store(s) that offer for sale Defendant's products, including the one(s) located in the County of Los Angeles. The Website also offers the public online features that allow the sale of Defendant's goods and services.

20. Plaintiff is informed and believes, and thereon alleges that, at all relevant times, Defendant has continuously been doing business in Los Angeles, California.

21. The brick-and-mortar location(s) that offer for sale Defendants' products, including the retail store(s) located within the County of Los Angeles, California, are commercial stores that offer for sale clothing and other personal accessories to the public. Those retail store(s) within the County of Los Angeles, California are places of public accommodation open to the public. *See* UCRA, Cal. Civ. Code § 51, *et seq*. Defendant's Website is a service, privilege, or advantage of those physical location(s). Through the Website, customers may review information and make purchases relating Defendant's goods and services offered online and in physical brick-and-mortar location(s).

22. The access barriers Plaintiff encountered on Defendant's Website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from full access to Defendant's Website. Similarly, the access barriers Plaintiff

encountered on Defendant's Website have impeded Plaintiff's full and equal enjoyment of goods and services offered at brick-and-mortar location(s) that offer for sale Defendant's products.

23. The true names or capacities, whether individual, corporate, associate or otherwise of defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said DOE defendants by such fictitious names.

24. Plaintiff is informed and believes, and thereon alleges that each of the defendants designated herein as a DOE is responsible for the unlawful acts as herein alleged, and Plaintiff will ask leave of the Court to amend this complaint to show its true names and capacities when same have been ascertained.

25. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned Defendants, and each of them, were the agents, servants and employees each of the other, acting within the course and scope of said agency and employment, with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions alleged herein were made known to and ratified by each of the Defendants (including any DOE defendant).

26. Defendant and each and every DOE Defendant shall be referred to collectively as "Defendants" hereafter.

## IV. FACTUAL ALLEGATIONS

27. Plaintiff is informed and believes, and thereon alleges that Defendants manage, own, operate, partner with and/or collaborate with brick-and-mortar location(s) that offer Defendants' goods and services for sale to the general public, including but not limited to commercial retail store(s) that are places of public accommodation.

28. Plaintiff is informed and believes, and thereon alleges that Defendants operate, maintain, update, monetize and/or own a branded commercial Internet website located at

https://www.patagonia.com/ for potential and existing customers to conveniently obtain information and make purchases related to Defendants' goods and services, which include clothing and other personal accessories. Among other features on the Website, Defendants promote accessing information about Defendant's products and brick-and-mortar store(s) that offer for sale Defendants' products and making purchases online through the Website. Through its Website, Defendants provide to the public a wide array of goods, services, discounts, gift cards, and/or information concerning brick-and-mortar retail store(s) that offer for sale Defendants' products, including the one(s) located in the County of Los Angeles.

29. Customers use Defendants' Website to access many goods and services available at brick-and-mortar location(s) that offer Defendant's products.

30. It is undisputed that the Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, etc., for sighted and visually impaired individuals. When properly accessible, the Internet provides individuals with disabilities significant independence. Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

31. Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

32. Except for legally blind individuals whose residual vision allows them to use them to use magnification, screen reading technology is the only method which allows visually impaired

individuals independent access to the Internet. In this case, Plaintiff can only access the Internet independently with the assistance of a screen-reader.

33. For the screen reader technology to function, the information on a website must be capable of being rendered into meaningful text. If the website content is constructed such that it cannot be rendered into meaningful text, visually impaired individuals are unable to access the same content available to sighted individuals because they cannot detect what is depicted on the screen and, for example, click where required to access further information and services.

34. There are well-established industry adopted guidelines for making websites accessible to visually impaired individuals. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility.

35. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them.

36. These guidelines recommend several basic and easily to implement components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring that all functions can be performed using a keyboard and screen reader; ensuring that image maps are accessible; removing empty links or headings which are confusing; removing documents which do not allow screen-readers to properly read the text; and adding headings and links so that visually impaired people can easily navigate the site. Without these very basic components, a website will be inaccessible to visually impaired persons using screen readers.

37. In this case, based on information and belief, Plaintiff alleges that Defendants have a policy and practice of denying the visually impaired full access to their Website, including access to the goods and services offered by Defendants through their Website. Due to Defendants' failure and refusal to remove access barriers to their Website, visually impaired individuals have been and are being denied equal access to physical location(s) that offer Defendants' products, as well as to the numerous goods, services and benefits offered to the public through their Website.

38. Defendants deny the visually impaired full access to goods, services and information made available through their Website by preventing them from freely navigating the Website.

39. Defendants' Website contains access barriers that prevent free and full use by visually impaired persons using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text or text equivalent on graphics, inaccessible forms, the lack of adequate prompting and labeling, the denial of keyboard access, empty links and headings, inability to complete important tasks using the keyboard and screen reader alone, and content which is not fully readable or navigable using a screen reader.

40. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen reader can speak the alternative text while a sighted user sees the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Defendants' Website that lack a text equivalent. The lack of Alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. Screen readers detect and vocalize Alt-text to provide a

description of the image to a blind computer user. As a result, visually impaired customers of Defendants are unable to effectively determine what is on the Website and fully browse the site.

41. Defendants' Website also lacks prompting information and accommodations necessary to allow visually impaired shoppers who use screen readers to locate and accurately fill-out online information. Specifically, due to the lack of adequate and functional labeling, visually impaired customers cannot, for example, independently and fully access and utilize the Website.

42. Defendants' Website also includes numerous instances of empty links, labels and/or headings which prevent visually-impaired individuals from recognizing the function or purposes of links, labels and/or headings contained in the Website. If a link, label or heading contains no text, the function or purpose of the link, heading or heading will not be presented to the user. This can introduce confusion for keyboard and screen reader users.

43. As another example of barriers present on Defendant's Website, there are several occurrences where functions cannot be performed using a keyboard and screen reader. This includes, but is not limited, to the section relating to Defendant's products.

44. Due to Defendants' Website inaccessibility, visually impaired customers of Defendants cannot independently investigate goods and services offered by Defendants and make purchases via the Internet as sighted individuals can and do.

45. Defendants' Website thus contains significant access barriers which deny full and equal access to Plaintiff, who would otherwise use their Website and who would otherwise be able to fully and equally enjoy the benefits of the physical location(s) that offer for sale Defendants' products.

46. Plaintiff has personally patronized Defendants' Website in the past, and intends to continue to patronize Defendants' Website. However, unless Defendant is required to eliminate

the access barriers at issue, and required to change their policies so that access barriers do not reoccur on Defendants' Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendants' Website.

47. Specifically, the last time Plaintiff attempted to do business with Defendants using their Website was in or around late 2019, and Plaintiff still encountered barriers to access on their Website. Despite past and recent attempts to do business with Defendants on their Website, the numerous access barriers contained on the Website and encountered by Plaintiff have denied Plaintiff full and equal access to Defendants' Website. Plaintiff, as a result of the barriers on the Website, continues to be deterred on a regular basis from accessing Defendant's website. Likewise, based on the numerous access barriers Plaintiff has been precluded from the full and equal enjoyment of physical location(s) that offer for sale Defendants' products.

48. If Defendants' Website was equally accessible to all, Plaintiff could independently navigate the website, complete a desired transaction, and find a location to visit.

49. Through her many attempts to use Defendants' Website, Plaintiff has actual knowledge of the access barriers that make these privileges, goods or services inaccessible and independently unusable by blind and visually-impaired people.

50. There are readily available and easy to implement guidelines, available to Defendant on the Internet, for designing, constructing and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics, including labels for each form control and text for all links, providing alternatives to inaccessible content and ensuring that all significant functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to

Defendants' Website accessibility would not fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

51. Because maintaining and providing a website where all functions can be performed using a keyboard, would provide full, independent and equal accessible to all consumers, Plaintiff alleges that Defendants have engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a. Construction and maintenance of a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers.

52. Because Defendants' Website has never been equally accessible, and because Defendants lack a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

53. If Defendants' Website were equally and fully accessible to all, Plaintiff and similarly situated visually impaired people could independently view information on the Website, access details relating to physical location(s) that offer for sale Defendants' products, make purchases of goods and services online and review information relating to other goods and services available via Defendants' Website.

54. Although Defendants may currently have centralized policies regarding the maintenance and operation of their Website, Defendants lack a plan and policy reasonably calculated to make the Website fully and equally accessible to, and independently usable by, the visually impaired.

55. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendants' Website in violation of their rights.

**FIRST CAUSE OF ACTION**
**Violation of Unruh Civil Rights Act**
**(California Civil Code §§ 51, 52, *et seq.*)**
**(Injunctive Relief And Damages)**

56. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph hereafter necessary or helpful to state this cause of action as though fully set forth herein.

57. The Unruh Civil Rights Act guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. *See* Cal. Civ. Code § 51(b).

58. Plaintiff is informed and believes, and thereon alleges that Defendants manage, own, operate, partner with and/or collaborate with brick-and-mortar location(s) that offer Defendants' goods and services for sale to the general public, including but not limited to commercial retail store(s) that are places of public accommodation. Those retail store(s) are commercial stores that offer for sale clothing and other personal accessories to the public. Defendants' business transactions and/or establishments are within the jurisdiction of the State of California, and as such are obligated to comply with the provisions of URCA, California Civil Code §§ 51, *et seq.*

59. Upon information and belief, Plaintiff alleges that Defendant owns, operates, manages, updates and/or monetizes its Website, which provides to the public a wide array of goods,

services, discounts, gift cards, and/or information concerning the brick-and-mortar retail store(s) that offer for sale Defendants' goods, including the one(s) located in the County of Los Angeles. The Website also offers the public features that allow the sale of Defendant's goods and services.

60. Upon information and belief, Defendants generate significant revenue from the sale of goods and services through their Website. Defendants' Website is a service provided by Defendants that is not fully accessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendants make available to the non-disabled public. Defendants are violating the UCRA, Civil Code §§ 51, *et seq.*, by denying visually-impaired customers the goods and services provided on their Website. These violations are ongoing.

61. Defendants' actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code §§ 51, *et seq.*, because, among other things, (1) Defendants have constructed, maintained, owned, monetized and/or operated a Website that is inaccessible to visually impaired individuals, such as Plaintiff; (2) Defendants have opted to maintain this Website in such an inaccessible form despite well-established and readily implementable industry guidelines for making websites accessible; (3) and Defendants have failed to take action to correct and rectify these barriers even after being on notice of the discrimination that such barriers may create for visually impaired individuals, such as Plaintiff.

62. Defendants are further violating the UCRA, Civil Code §§ 51, *et seq.*, because the conduct as alleged herein violates various provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, for the reasons set forth above. Under Cal. Civ. Code § 51(f), a violation of an individual's rights under the ADA also constitutes a violation under the UCRA. Defendants' discriminatory conduct alleged herein includes, *inter alia*, the violation of

COMPLAINT
- 15 -

the rights of persons with disabilities set forth in Title III of the ADA and, therefore, also violates the Unruh Act. *See* Cal. Civ. Code § 51(f).

63. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm. Plaintiff is therefore entitled to injunctive relief remedying the discrimination. Plaintiff expressly limits the cost of all injunctive relief sought to $15,000 or less.

64. Plaintiff is also entitled to statutory minimum damages pursuant to UCRA, Civil Code § 52 for each offense. Plaintiff hereby expressly limits the total amount sought for every single offense to $34,999 or less.

65. Plaintiff is further entitled to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays pray for judgment against Defendants, as follows:

A. A preliminary and permanent injunction enjoining Defendants from further violations of the UCRA, Civil Code §§ 51, *et seq.*, with respect to their Website, https://www.patagonia.com/, and all of the webpages and urls contained therein;

B. A preliminary and permanent injunction requiring Defendants to take the steps necessary to make their Website readily and fully accessible to and usable by blind and visually-impaired individuals. Plaintiff expressly limits the cost of injunctive relief sought in sections A and B to $15,000 or less;

C. An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

D. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to California Civil Code § 52(a);

COMPLAINT
- 16 -

E. For pre-judgment interest to the extent permitted by law;

F. For costs of suit; and

G. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: June 3, 2020            BEVERLY HILLS TRIAL ATTORNEYS, P.C.

*[signature]*
Aza Mouzari, Esq.
Attorney for Plaintiff
ADERIYIKE LAWAL

COMPLAINT
- 17 -